09-0827-cr
United States v. Montague

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 11th day of May, two thousand ten.

PRESENT:   ROGER J. MINER,
                    GERARD E. LYNCH,
                                        *Circuit Judges*,
                    DAVID G. TRAGER,
                                        *District Judge.*[*]

------------------------------------------------------------------

UNITED STATES OF AMERICA,
                                        *Appellee*,
                    v.                                                    No. 09-0827-cr

CLARENCE MONTAGUE,
also known as JEFFREY SPENCER,
                                        *Defendant-Appellant.*
----------------------------------------------------------------------

FOR APPELLANT:          Yuanchung Lee, Federal Defenders of New York, Inc.,
                                   Appeals Bureau, New York, New York, on submission.

FOR APPELLEE:           Howard S. Master, Katherine Polk Failla Assistant United
                                   States Attorneys <u>for</u> Preet Bharara, United States Attorney for
                                   the Southern District of New York, New York, New York, on
                                   submission.

---

[*] The Honorable David G. Trager, of the United States District Court for the Eastern District of New York, sitting by designation.

Appeal from a judgment of conviction and sentence entered in the United States District Court for the Southern District of New York (William H. Pauley III, Judge).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment of the district court is AFFIRMED.

Clarence Montague appeals from a sentence of 41 months in prison imposed for a conviction, following a guilty plea, of illegal reentry into the United States after deportation subsequent to conviction for an aggravated felony in violation of 8 U.S.C. § 1326(a) & (b)(2). We assume the parties' familiarity with the relevant facts and procedural history of this case, and the issues presented on this appeal.

In coming to a reasonable sentence, a district court must consider the factors listed in 18 U.S.C. § 3553(a), including the advisory Sentencing Guidelines range, and "conduct its own independent review of the sentencing factors, aided by the arguments of the prosecution and defense," in order to reach "an informed and individualized judgment . . . as to what is 'sufficient, but not greater than necessary' to fulfill the purposes of sentencing." United States v. Cavera, 550 F.3d 180, 189 (2d Cir. 2008) (en banc), quoting 18 U.S.C. § 3553(a). We review sentences under a "deferential abuse-of-discretion standard," id., quoting Gall v. United States, 552 U.S. 38, 40 (2007), and will "set aside a district court's substantive determination only in exceptional cases where the trial court's decision cannot be located within the range of permissible decisions," id. (emphasis and internal quotations marks omitted).

Montague argues that his sentence was "greater than necessary to achieve the ends

2

of sentencing." In arguing that his sentence was substantively unreasonable, Montague emphasizes that he has no criminal history apart from the relevant aggravated felony, which was the result of an "incident" that occurred twenty years ago in 1989. He adds that following this incident he was on pretrial release for three years with no complications, while he worked and supported his family, and that while in prison he was a "model inmate," received education, and developed working skills as a carpenter. Moreover, Montague stresses that the only reason for his illegal reentry was the commendable purpose of helping save his teenage son from going down a wayward path towards crime. According to Montague, his efforts have succeeded, and his son has grown toward law-abiding adulthood. Finally, Montague notes that he fully cooperated with police regarding his illegal reentry, and never contested his guilt. For these reasons, among others, Montague argues that he should have received a lighter sentence.

However, the "incident" that Montague was imprisoned for was first-degree manslaughter for which he spent eight years in prison. As the district court noted, an individual, like Montague, who has committed "such a violent felony is precisely the kind of individual who the law intends to keep out of the United States." With regards to Montague's reason for his reentry, the district court correctly noted that "[w]hile it was certainly a noble purpose for which he was coming back here to aid his son there were many alternatives to the defendant defying the orders of the Court and reentering the United States without permission." His son could have received guidance from people who already lived in the United States, or gone to Jamaica to be with his father.

3

Moreover, the district court reasonably considered Montague's illegal reentry a bad example for his son. The district court's bottom-of-the-Guidelines sentence, which was based on these considerations along with the need for specific and general deterrence aimed at Montague and other people convicted of violent felonies, was not substantively unreasonable.

Montague argues that we should follow the Ninth Circuit's decision in United States v. Amezcua-Vasquez, 567 F.3d 1050 (9th Cir. 2009), which held that a 52-month sentence for illegal reentry, which fell within the applicable 46 to 57 month Guidelines range, was substantively unreasonable, because "of the staleness of [the defendant's] prior conviction and his subsequent history showing no convictions for harming others or committing other crimes listed in Section 2L1.2 [of the Guidelines]." Id. at 1055.

Montague's reliance on Amezcua-Vasquez is unavailing. Aside from the fact that the decision in Amezcua-Vasquez is not binding on us, it is also distinguishable. First, Montague was deported after being convicted of a more serious crime and serving a longer sentence than Amezcua. Amezcua was sentenced to four years for assault with great bodily injury and attempted voluntary manslaughter, while Montague served eight years for first degree manslaughter pursuant to a four to twelve year sentence. See id. at 1051. Second, Amezcua's prior conviction was more "stale." He was convicted in 1981, released in 1984, but only deported in 2006. Id. at 1052, 1056. In contrast, Montague was convicted in 1992 and released and immediately deported in 2000. To point out that it has been eighteen years since this conviction is to ignore the fact that about half of that

4

time was spent in custody, either on the manslaughter conviction or on the instant charge, and most of the rest was spent outside the United States. Indeed, unlike Amezcua, Montague's criminal conviction was recent enough to be included in the calculation of his criminal history points. Third, the challenged illegal-reentry sentence in Amezcua-Vasquez was eleven months longer than Montague's sentence. Finally, Amezcua had lived in the United States for almost fifty years prior to his deportation, which was far longer than Montague had. Given these various distinctions, even assuming arguendo that Amezcua-Vasquez was correctly decided (an issue we need not and do not address), that case does not persuade us that Montague's sentence was unreasonable.

While Montague argues that he has even stronger mitigating factors than Amezcua, because he has no other criminal convictions, he waited six years before illegally reentering following deportation, while Amezcua waited only two weeks, and he came back to counsel his son, instead of to work, this argument is unconvincing. Amezcua's additional convictions were for relatively minor offenses, and while Montague may have had a more sympathetic purpose for returning to the United States, that is not enough to show that Montague has stronger mitigating circumstances.

Montague also argues that the fact that other judicial districts use "fast-track" programs for illegal reentry convictions, where defendants in the same position as he get lighter sentences in exchange for agreeing to a quick removal, evinces that a lighter sentence would be sufficient. However, we have explicitly ruled that "a district court's refusal to adjust a sentence to compensate for the absence of a fast-track program does

not make a sentence unreasonable." United States v. Mejia, 461 F.3d 158, 164 (2d Cir. 2006).

Finally, Montague's argument that his sentence is unreasonable because the Guidelines provide for the same or lower offense levels for crimes that are, in his estimation, worse than his crime of illegal reentry may suggest that the Sentencing Commission could usefully revisit its guidelines, but does not show that his sentence was substantively unreasonable. The Sentencing Commission, and the district court, are entitled to make their own judgments about the need for punishment and deterrence, and the relative seriousness of different offenses. We cannot say that the district court's decision to treat Montague's crime as serious and the need for deterrence as great was an unreasonable exercise of its discretion.

For the foregoing reasons, the judgment of the district court is AFFIRMED.

FOR THE COURT:

CATHERINE O'HAGAN WOLFE, Clerk of Court